UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TRACY L. PRINGLE,

    Plaintiff,

v.                                                                   Case No. 5:17cv189-CJK

NANCY A. BERRYHILL, acting
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Tracy L. Pringle's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the Administrative Law Judge's ("ALJ") evaluation of plaintiff's subjective symptoms is not supported by substantial evidence. The decision of the

Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

ISSUES ON REVIEW

Ms. Pringle, who will be referred to as claimant, plaintiff, or by name, claims the ALJ erred by: (1) failing to follow the requirements of SSR 16-3p and by ignoring the pain standard established by the Eleventh Circuit; (2) mischaracterizing claimant's activities of daily living; (3) denying the claim based on observations concerning plaintiff's lack of discomfort at the hearing; and (4) failing to follow the provisions of SSR 02-1p when evaluating the effect of plaintiff's obesity. (Doc. 16).

PROCEDURAL HISTORY

On March 20, 2014, plaintiff protectively filed applications for DIB and SSI, claiming disability beginning February 20, 2014, due to depression, bipolar disorder, back pain, diabetes, and carpal tunnel syndrome. T. 81, 92.[1] The Commissioner denied the applications initially and on reconsideration. T. 91, 102, 117, 130. After a hearing on February 10, 2016, the ALJ found claimant not disabled under the Act. T. 10-19. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The Commissioner's determination is now before the court for review.

---

[1] The administrative record filed by the Commissioner consists of 12 volumes (docs. 12-2 through 12-13) and has 713 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, she is not disabled.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made several findings relative to the issues raised in this appeal:

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

- Claimant has the following severe impairments: obesity, degenerative disc disease of the lumbar spine, diabetes mellitus type II, and bilateral carpal tunnel syndrome. T. 12.

- Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she could not climb ladders, ropes, or scaffolds; she could only occasionally climb ramps or stairs; she could only occasionally balance, stoop, kneel, crouch, and crawl; she requires a sit/stand option every 30 minutes for 10 minutes; she could frequently handle and finger with her bilateral upper extremities; she could occasionally reach overhead bilaterally; she could not have concentrated exposure to excessive vibration or unprotected heights. T. 14.

- Claimant has not been under a disability, as defined in the Act, from February 20, 2014, through May 31, 2016. T. 18.

## FACT BACKGROUND AND MEDICAL HISTORY

At the February 2016 hearing, Ms. Pringle testified about her health, daily activities, and work history. She is 5'9" and weighs 217 pounds. T. 48. While working as a certified nursing assistant in 2007, she suffered a back injury. T. 39-40, 42. She returned to light duty but stopped working in 2009 after her back pain worsened and she settled a workers' compensation claim. T. 40.

The back pain radiates to plaintiff's lower extremities. T. 43. To treat the pain, she takes Percocet, Flexeril, and naproxen. T. 43. Laying down for 30 minutes to an hour provides "a little bit of relief" from pain. T. 46. She also experiences numbness and tingling in her lower extremities, as well as weakness which limits her ability to stand and walk. T. 43-44, 47. She can stand for 20 to 30 minutes; she can walk for 50 feet but uses a cane. T. 44. She can sit for 45 minutes to an hour and a half. T. 44-45.

On a "really bad day," claimant "usually" does not "get out of the bed unless [she has] to go to the bathroom or need[s] something to drink." T. 53. She has 7 to 9 "bad days" per month. T. 54. Pain also limits her to 3 to 5 hours of sleep a night. T. 54. Plaintiff has not had back surgery, but met with a doctor in January 2016 to discuss the possibility. T. 41-43.

She wears wrist braces at night for carpal tunnel syndrome. T. 49. The pain in her wrists varies; some days she "can write four or five sentences" and some days she "can write three words and the rest of it you can hardly read because [her] hand cramps really bad." T. 49-50. Similarly, "[s]ometimes [she] can grip things, but sometimes [she will] have a little bit of numbness in [her] hands so it makes it hard to feel[.]" T. 50.

Medical records also appear in the evidence before the Commissioner. From January 2013 to January 2016, Ms. Pringle sought treatment for back pain and carpal

tunnel syndrome at the NeuroPain Center. T. 418-92, 601-704. Plaintiff consistently reported experiencing significant back pain, which doctors treated with narcotics, naproxen, and muscle relaxers. Examinations of the lumbar spine revealed pain upon palpation and decreased range of motion. T. 611, 617, 623, 629, 635, 641, 653, 664, 674, 685, 690, 695, 701.

The record contains diagnostic imaging of the lumbar spine. X-rays taken on August 13, 2013, revealed: (1) "Straightening of the normal lumbar lordosis."; (2) "Marked degenerative disc disease at L4-5 with sclerotic endplate changes and vacuum disc phenomena present. . . . [E]vidence of degenerative disc disease . . . seen to lesser extent at L3-4 and L5-S1."; and (3) "Facet degenerative changes extending from L2-3 through L5-S1." T. 460.

An MRI, dated December 10, 2013, showed: (1) "Moderate to severe narrowing of the central canal . . . at L4-5 due to a broad-based disc protrusion with narrowing of the canal to 5 mm. The disc appears to displace the descending left L5 nerve roots in the lateral recess with mild to moderate foraminal narrowing[.]"; and (2) "[M]oderate narrowing of the central canal at L3-4 due to broad-based disc protrusion that is . . . centered to the right as well as facet hypertrophy and posterior epidural fat. The disc touches the descending right L4 nerve roots in the lateral recess and appears to slightly displace the nerve roots. Mild to moderate foraminal narrowing is present." T. 433-34.

A second MRI, dated January 14, 2016, revealed: (1) "Moderate central canal stenosis . . . at L3-4 with a right paracentral disc protrusion that touches the descending right L4 nerve root in the lateral recess with the nerve root lying between the disc and ligamentum flavum. The disc lies adjacent to the undersurface of the existing right L3 nerve root in the neural foramina with moderate foraminal narrowing"; (2) "[B]road-based disc protrusion at L4-5 with moderate central canal stenosis and narrowing the central canal to 7.5 mm. The disc lies adjacent to the undersurface of the existing right L4 nerve root in the neural foramina"; and (3) "[B]road-based disc protrusion at L5-S1 with small amount of fat effacing the ventral thecal sac with posterior displacement of the descending left S1 nerve root in the lateral recess." T. 601-02.

As part of the disability application process, Lionel Henry, M.D., reviewed Ms. Pringle's medical records on July 5, 2014, and offered an opinion as to functional limitations. T. 115-16. Dr. Henry concluded plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. T. 115.

## ANALYSIS

Subjective Symptoms

Ms. Pringle argues the ALJ's evaluation of her complaints of pain is not supported by substantial evidence.[3] "When a claimant attempts to establish a disability through [her] own testimony about pain or other subjective symptoms, the ALJ must apply a three-part 'pain standard.'" *Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859 (11th Cir. 2012) (citation omitted). "Under that standard, the claimant must present: '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) evidence that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Id.* (*quoting Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). "The standard also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (*citing Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir. 1989)). "[T]he ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62

---

[3] Part of the argument Ms. Pringle raises is based on an inconsistency within the ALJ's decision and the ALJ's reference to 96-4p. The ALJ found "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." T. 16. Later, however, the ALJ stated "clinical and diagnostic records fail to document any abnormality, which could reasonably be expected to result in the degree of limitations alleged." T. 16.

Case No. 5:17cv189-CJK

(11th Cir. 1995)). And of course, those reasons must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ will consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ identified several reasons for discounting plaintiff's allegations. First, the ALJ found "claimant engages in multiple activities of daily living," asserting claimant: (1) "is able to attend appointments, drive, care for her children, use the computer, shop, and prepare meals on a regular basis"; (2) "is able to interact with her husband, her children, and other family members without difficulty"; and (3) "is able to focus and concentrate long enough to drive, interact with her relatives, watch television, use the computer, and she was able to participate in the hearing

without difficulty." T. 13, 16. To support this description of claimant's activities, the ALJ relied on a function report claimant submitted to the Social Security Administration. T. 13.

An independent review of the record, however, shows the ALJ mischaracterized and exaggerated Ms. Pringle's self-described activities.[4] Although plaintiff attended appointments, her husband took her. T. 281. She indicated she did not drive often due to side effects from medication. T. 259. The ALJ stated, without qualification, that plaintiff cared for her children. Claimant, however, specified that her "husband helps [her] take care of the kids and [the] kids are old enough to help take care of themselves." T. 263. She shopped "usually once a month" and for "no longer than 30 minutes." T. 265. The ALJ also suggested claimant prepared meals on a regular basis, but claimant indicated her husband helped her cook. T. 264.

Thus, although the ALJ suggested plaintiff consistently engaged in the listed activities, the function report and related evidence indicated she infrequently did so and required assistance from others. Moreover, "participation in everyday activities

---

[4] The Commissioner "concedes that the tone of the ALJ's statement of Plaintiff's reported daily activities was more positive than the tone of Plaintiff's statement of her daily activities," but argues "Plaintiff has not shown that the ALJ's statement of her reported daily activities was factually inaccurate." (Doc. 17, p. 9). The Commissioner, however, does not defend the ALJ's recitation of claimant's daily activities. (*Id.*, p. 9-10). Instead, the Commissioner claims that "even if the ALJ's statement of Plaintiff's reported daily activities was inaccurate, remand is not warranted" because the ALJ provided a different, "proper reason for rejecting Plaintiff's allegations of disabling symptoms[.]" (*Id.*, p. 10).

Case No. 5:17cv189-CJK

of short duration, such as housework or fishing" does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *see also Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("It is well established that sporadic or transitory activity does not disprove disability."); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989) ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled."); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances."). Plaintiff's self-reported activities of daily living, therefore, do not support the ALJ's assessment of plaintiff's subjective complaints.

The ALJ acknowledged "claimant has chronic pain, primarily related to her diagnoses of degenerative disc disease of the lumbar spine and bilateral carpal tunnel syndrome[.]" T. 17. Nevertheless, the ALJ concluded Ms. Pringle's complaints of disabling pain were not entirely credible because "she receives consistent medical treatment, which is noted to alleviate her most chronic pain." T. 17. To support this conclusion, the ALJ cited treatment records from the NeuroPain Center, dated January 25, 2013, to January 14, 2016. T. 17, 418-92, 601-704.

The cited records do not show treatment "alleviate[d] [claimant's] most chronic pain." After the alleged onset date, Ms. Pringle never reported pain lower

than a 6 on a scale from 1 to 10. T. 418-22, 603-704. On March 3, 2014, Dr. Sana Javed Ebeid noted plaintiff took Norco "up to three times a day as needed[,]" but "[i]t is not relieving her pain much." T. 421. Accordingly, Dr. Ebeid increased the strength of the medication. T. 421. On December 31, 2015, Ms. Pringle reported "[s]he continues to have significant lower back pain, radiating down the lower extremities, associated with numbness and tingling sensation in the lower extremities." T. 603. She said she "continues to take . . . Flexeril and . . . Percocet, [which provides] some relief, [but does not take] care of her symptoms." T. 603. Dr. Mustafa Hammad observed plaintiff "is with significant pain. The etiology of the pain is documented on examination and imaging. Despite conservative therapy with non-opioid therapy, physical therapy and injections, the patient continues to complain of [a] significant amount of pain." T. 606. The records cited by the ALJ, therefore, do not support a finding that treatment alleviated plaintiff's "most chronic pain."

The Commissioner attempts to rescue the ALJ's decision by arguing "Plaintiff's allegations of disabling symptoms were inconsistent with the opinion[] of . . . state agency medical consultant Dr. Henry."[5] (Doc. 17, p. 7). The

---

[5] The Commissioner also asserts plaintiff's allegations were inconsistent with the opinions of the state agency psychological consultants. (Doc. 17, p. 7). At step two, the ALJ assigned the psychologists' opinions great weight and cited them to support the finding that Ms. Pringle did not have a severe mental impairment. T. 13-14. The ALJ, however, did not discuss the opinions when evaluating the RFC or rely on them to discount claimant's physical symptoms.

Commissioner further argues that Dr. Henry's opinion, standing alone, provides substantial evidence for the ALJ's evaluation of plaintiff's complaints of pain. Such an argument, however, is problematic for several reasons.

First, Dr. Henry offered his opinion on July 5, 2014, almost two years before the ALJ issued his decision, and the medical records indicate plaintiff's condition deteriorated over time. For example, on December 3, 2015, Ms. Pringle complained "of a gradual increasing pain in her lower back with . . . increasing lower extremity weakness over the last several months as well as . . . increasing radicular symptoms of numbness and tingling." T. 609.

Second, the ALJ never expressly cited Dr. Henry's opinion as the basis for discounting plaintiff's complaints of disabling pain. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). In fact, the ALJ gave Dr. Henry's opinion little weight. T. 16. Dr. Henry believed plaintiff could perform light work, T. 115-16, but the ALJ concluded "the limitations due to the claimant's COPD symptoms and musculoskeletal difficulties reduce her physical ability to sedentary work with the additional restrictions [identified in the RFC]." T. 16. By itself, the opinion of a nonexamining physician, which the ALJ assigned little weight, does not constitute substantial evidence supporting the ALJ's

assessment of plaintiff's subjective symptoms. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) ("[R]eports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision."). Because the ALJ did not articulate adequate reasons, supported by substantial evidence, for discrediting Ms. Pringle's allegations of completely disabling symptoms, this case should be remanded to the Commissioner for further proceedings.

Hearing Demeanor

Ms. Pringle also argues the ALJ impermissibly rejected her complaints of disabling pain based on the ALJ's "observation of the claimant's lack of discomfort at the hearing." (Doc. 16, p. 23-24). The ALJ's decision, however, shows the ALJ referenced claimant's ability "to participate in the hearing without difficulty" only in the context of evaluating her limitations in concentration, persistence, and pace at step two. T. 13. Thus, the ALJ did not rely on observations of plaintiff at the hearing to discount her complaints of disabling pain. Furthermore, an ALJ is not categorically prohibited from considering a claimant's behavior at the hearing when evaluating a disability claim. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) (noting Eleventh Circuit precedent does not "prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing [but] an ALJ must not impose his observations in lieu of a consideration of the medical

evidence presented"). With respect to this argument, plaintiff fails to demonstrate reversible error.

Obesity

Lastly, Ms. Pringle claims the ALJ failed to follow the provisions of SSR 02-1p when evaluating the effect of obesity. The ALJ, however, stated "[i]n accordance with SSR 02-1p, the undersigned has considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment." T. 15. Notably, plaintiff did not identify—or cite evidence supporting—any specific functional limitation caused by her obesity not already accounted for in the RFC.

Accordingly, it is ORDERED:

1. The Commissioner's decision is set aside and the matter REMANDED for further proceedings consistent with this order.

2. The clerk is directed to enter judgment in favor of plaintiff and close the file.

DONE AND ORDERED this 24th day of September, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**